VINCENT JOSEPH BORDEAU v. STATE OF NEBRASKA.

FILED JULY 3, 1933. No. 28691.

*J. J. Thomas* and *Herbert W. Baird,* for plaintiff in error.

*Paul F. Good, Attorney General,* and *William H. Wright, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY and PAINE, JJ., and CHASE and TEWELL, District Judges.

GOSS, C. J.

Plaintiff in error, hereinafter called defendant, on October 17, 1930, pleaded guilty to an information charging murder in the second degree. On November 3, 1930, he was sentenced and committed to 25 years in the penitentiary, beginning as of the date of his plea. March 7, 1931, during the same term of the district court, he filed a motion to vacate the judgment so as to permit him to withdraw the plea and to plead not guilty. The motion was heard and submitted upon affidavits and was taken under advisement January 9, 1932. On September 13, 1932, the district court denied the motion. From this judgment defendant brought proceedings in error.

The information laid the act on October 16, 1930, and charged that the defendant "unlawfully, maliciously, feloniously and purposely, but without premeditation and deliberation, stabbed Jaffa (Jack) Workman with an ice pick and as a result thereof he died on the 16th day of October, 1930; defendant thus committed murder in the second degree." This charge contained the essential elements of murder in the second degree. Comp. St. 1929, sec. 28-402.

We expressly do not decide but leave out of view the question, and any discussion, of the jurisdiction of the district court to reopen its former judgment thus applied for by defendant. Proceeding here as if the jurisdiction existed, we examine the record to ascertain and decide

whether the court erred in its judgment on the merits of defendant's claims of error. These are, in substance, that the court erred: (1) In finding murder in the second degree rather than manslaughter; (2) in abuse of discretion by refusing to set aside the plea of guilty and to permit defendant to present a defense; (3) in that the findings and judgment are not sustained by sufficient evidence; and (4) in that the findings and judgment are contrary to law.

Defendant was born in Galveston, Texas, July 30, 1902, as shown by the affidavit of his mother. He was educated in the public schools and had one year in college. He was employed by the Sante Fe Railway from September 3, 1918, to April 20, 1930, first as a yard clerk and later as switchman and engine foreman. The last three years his wages approximated $200 a month. Until his marriage he lived at home. He was a dutiful son, an energetic worker, and a law-abiding young man. The evidence shows that, until the present trouble arose, his record is clear. October 2, 1929, he married Pearl Epp, a native of Nebraska. She had been married, had a young son, but had been divorced. They had met at an evening party at Galveston Beach. A month or so later he met her on the street and she informed him of the necessity of an operation for appendicitis. He arranged for her operation and frequently visited her during her convalescence in the hospital. Thereafter he learned that she had been an inmate of a house of ill fame, but upon her recovery she secured employment in a store. He married her and obtained possession of her son, to whom he was greatly attached. Owing to his want of employment, his wife and son returned to her people in Aurora, Nebraska, early in May, 1930, and he followed the latter part of that month looking for railway employment, left for Dodge City, Kansas, June 21 and worked until July 18 for the Sante Fe as a brakeman; then went to Pueblo, where he worked until August 18 as a laborer on the construction of a railroad

ice platform; he gave up this employment and went to Seward, Nebraska, on receipt of a letter from his wife that a pipe line was being laid, but on arrival found work suspended for want of pipe, so he returned to Pueblo and went to other places in search of work; he went back to Seward October 1 and obtained employment laying pipe at David City; he worked half a day on October 15 and all of the 16th at David City. It was the evening of October 16, 1930, the homicide occurred.

Late in July, 1930, defendant's wife came to Seward and worked in the Sunshine Inn. Defendant came there first on the 18th of August, 1930, and was in and out several times looking for work. But about October 1, 1930, he returned to Seward and remained until the tragedy, living with his wife and her boy. Before he went to Seward his wife had roomed with a young woman who appears from the evidence to have been a prostitute. Defendant caused them to separate. When defendant returned to Seward the last time the boy told him his mother had been "playing around" with Jack Workman. The evidence indicates that she, too, had been rather openly practicing her former profession for hire and that she was infatuated with Workman, who had become her illicit lover. Workman was a burly bootlegger, who appears to have been a menace to society at every point at which he contacted it. When defendant returned from work the evening of October 16 he did not find his wife at home. He learned that she and Workman had been consorting during the day; that they were drinking and behaving in a disorderly manner, and that Workman had made threats against defendant and against C. A. Naylor, proprietor of a restaurant. Defendant and Naylor were seeking to reach the chief of police to have Workman arrested for their protection. Defendant hunted for his wife and shortly after 9 o'clock in the evening found Workman at a gas filling station. Defendant had armed himself with an ice pick obtained at Naylor's restaurant

for use in his defense if in an extremity. Defendant's affidavit states that Workman was searching for something in the side pocket of his car. Defendant approached him and asked for his wife. Workman swore at him and struck at defendant, denying the presence of his wife. Defendant defended himself with his fists. Workman retreated to the car and appeared to be getting a weapon from the pocket of the rear door. Defendant saw Workman draw a hammer from the left-hand car pocket. He advanced toward defendant, who struck him with his ice pick, of which wound he later died.

The evidence shows that on the night of October 16, 1930, defendant was questioned by the county attorney and made answers in writing, after having been fully advised as to his immunity. On the morning of October 17, 1930, he was taken to the county court for his preliminary hearing. He was offered an opportunity to consult counsel and was informed that he would be furnished counsel if he so desired. He asked if he might act as his own attorney and did so. He was bound over to the district court. He immediately requested the county attorney to explain to him the different degrees of homicide, which was done. He offered to plead guilty to manslaughter, if the county attorney would charge that offense. The county attorney refused on the ground that he thought the facts indicated at least second degree murder. Later that day defendant told the county attorney he would plead guilty to murder in the second degree, if so charged. When he was so charged and was brought before the district court to be arraigned, the court very carefully and methodically explained to him his right to have counsel (either of his own or appointed by the court) and all other rights afforded him by law, including the nature of the charge and the penalties. He told the court he had not been influenced by promises or coercion or in any other manner in reaching this decision to plead guilty. Upon acceptance of such a plea, the court told defendant

he could have any one he desired talk to the court and that a full investigation would be made before sentence. Defendant was unusually well advised of and protected as to his legal rights. He was competent to refuse and did refuse counsel. It was not the duty of the court to force counsel upon him. 16 C. J. 823. "In a criminal prosecution, defendant's right to counsel may be waived. The trial in a criminal prosecution · may proceed without counsel for a mentally competent defendant who failed to employ an attorney and rejected the offer of the court to provide one for him." *Smythe v. State,* 124 Neb. 267.

Defendant is a young man of more than ordinary intelligence, education and poise. He conducted himself right well in the matter of the hearings. While one of his gentlemanly training and instincts would be more disturbed mentally than an habitual criminal, yet it seems he was capable of making his choice whether to plead guilty or to take a good chance of acquittal on the ground of self-defense. Defendant waived his right to an attorney. If he had not previously indicated a willingness to plead guilty to murder in the second degree, an information might have been filed by the county attorney charging murder in the first degree, with a possibility for that extreme offense.

A decision of fact, submitted to the trial court by affidavits, will not ordinarily be set aside on review unless unsupported by the evidence or clearly wrong. We are of the opinion that the findings and judgment of the district court were sustained by the evidence and were not contrary to law, that there was evidence justifying the finding of murder in the second degree, and that the district court did not abuse its discretion in refusing to set aside the plea of guilty and to permit a defense and trial by jury on the merits.

The cause does not come before us for review in such a form as to empower a reduction of the sentence as excessive, under the authority given this court in section

29-2308, Comp. St. 1929. Therefore, we do not pass upon the length of the sentence imposed. We say this so that the board of pardons may not be embarrassed or deterred by our action if and when the defendant may invoke its powers under chapter 29, art. 26, Comp. St. 1929.

Finding no prejudicial error, the judgment of the district court is

AFFIRMED.